James Mark Vogel,                                    Civ. No. 12-0088 (PJS/JJG)

                    Petitioner,

v.                                                   REPORT AND RECOMMENDATION

Tom Roy,

                    Respondent.

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Petitioner James Mark Vogel's Petition for Habeas

Corpus (ECF No. 1). Petitioner asserts he was deprived of satisfactory medical attention in

Aitkin County Jail. Petitioner argues he was coerced into pleading guilty so he could receive

better medical care upon transfer to custody of the Minnesota Department of Corrections

("DOC"). Petitioner also asserts a challenge based on ineffective assistance of counsel. As set

forth below, the Court recommends the petition for habeas corpus be denied.

I.      Background

Petitioner was arrested on February 16, 2009, for driving while under the influence of

alcohol. (Resp't App., Exh. 1, at 4.) He was held in Aitkin County Jail ("ACJ") for six months

prior to pleading guilty to the charges against him. *Vogel v. State* ("*Vogel I*"), No. A10-901,

2011 WL 589629, at *1 (Minn. Ct. App. Feb. 22, 2011). While incarcerated at ACJ, Petitioner

filed numerous requests for medical attention. The record reflects that at his intake at ACJ,

Petitioner discussed "a diagnosis of depression, a broken tooth, prescriptions for high blood

pressure and cholesterol, and prescriptions relating to mental health." (Resp't App., Exh. 4, at 2

(state court order denying motion to withdraw guilty plea).) When asked whether there were any other medical conditions about which ACJ should know, Petitioner responded there were not. (*Id.*) Petitioner submitted his first request for medical attention the day after he was arrested, February 17, 2009, but it only addressed prescriptions, dental questions, and an application for medical assistance. (*Id.*at 2-3.)

While Petitioner asserts he notified prison officials of his abdominal pain at his medical intake at ACJ, the record does not reflect any such notice. *Vogel I*, 2011 WL 589629, at \*2. Indeed, the record reflects that only a few of Petitioner's requests for medical attention concerned abdominal pain. *Id.* It was not until late July 2009 that Petitioner discussed his abdominal pain with jail staff. *Id.* Petitioner saw Janet Larson,[1] a nurse practitioner, on March 15, 2009, and May 29, 2009, to discuss his mental health and other related medications. (Resp't App., Exh., at 2-3.) Before the March 15, 2009 meeting with Nurse Larson, Petitioner noted his abdominal pain on the back of his medical request form, but did not mention abdominal pain when he visited with Nurse Larson. (*Id.* at 3.) Petitioner completed five more requests for medical attention between April 6, 2009 and May 13, 2009, none of which mentioned abdominal pain. (*Id.*) On July 23, 2009, Petitioner complained about abdominal pain to Nurse Larson, stating the pain came and went, but had gotten more persistent over the previous week. (*Id*. at 2.) Nurse Larson attributed Petitioner's abdominal pain to constipation and prescribed a laxative. *Vogel I*, 2011 WL 589629, at \*2.

Petitioner filed two complaints with ACJ requesting additional medical treatment. (Resp. to Answer 2, Mar. 1, 2012, ECF No. 12.) Petitioner asserts that, while being escorted to his cell

---

[1] In *Vogel v. Turner*, Civ. No. 11-0446 (PJS/JJG), a Section 1983 case, Defendant brought suit against "Janet Larsen," a nurse who gave Petitioner medical attention. Here, Defendant refers to "Janet Larson." The Court will continue to conform its spelling of names to the habeas petition.

following an administrative hearing at ACJ regarding his medical care, a jail administrator, Jeremy Swenson, said: "Just plead guilty to your DWI, and when you get to the D.O.C., they will take care of you." (Pet. 6.) Petitioner entered his guilty plea on August 18, 2009, and was sentenced to, among other things, 65 months in prison. (Resp't App., Exh. 1, at 13.) Sometime after Petitioner was transferred to DOC custody, he was diagnosed with mantle cell lymphoma, a rare and life-threatening disease. (Resp't App., Exh. 2, at 10-11 (transcript of hearing on motion to withdraw guilty plea).)

Shortly after he was diagnosed, Petitioner filed a post-conviction motion to withdraw his guilty plea. (*See* Resp't App., Exh. 2.) Petitioner based his motion to withdraw his guilty plea on an assertion that the plea was not voluntary. (Resp't App., Exh. 4, at 3.) Petitioner asserted his plea was involuntary because he was not receiving proper medical care for his abdominal pain in ACJ and he was later diagnosed with mantle cell lymphoma. (*Id.*)

The Honorable John R. Solien, District Court Judge, denied Petitioner's motion to withdraw the guilty plea based on the significant medical care Petitioner received, including corrective lenses and medication for his mental illness. (*Id.* at 4.) The court also acknowledged that Petitioner was represented by counsel at all stages of the proceedings, including at his plea and sentencing hearing. (*Id.*) The court further noted that when "[a]sked whether he was thinking clearly enough to make court decisions, [Petitioner] answered yes. When asked if he was taking medications, [Petitioner] replied 'I do, but not so they infringe upon my decisions.'" (*Id.*) Finding no showing of manifest injustice, the court denied Petitioner's motion to withdraw his plea. (*Id.*)

Here, Petitioner asserts he plead guilty only to be removed from jail so the DOC could provide medical attention. (Pet. 5.) Petitioner also asserts his attorney, Stephanie Shook,

Assistant Public Defender, coerced him to plead guilty, which constituted ineffective assistance of counsel. (Pet. 6.)

## II.      Discussion

As stated by the United States Supreme Court in *Preiser v. Rodriguez*, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." 411 U.S. 475, 484 (1973). On review of a habeas petition brought pursuant to 28 U.S.C. § 2254, a court determines whether the incarceration of a state prisoner violates the United States Constitution or United States Supreme Court precedent. 28 U.S.C. § 2254(a).

### A.      Procedurally Defaulted Claims Due to Lack of Fair Presentation

Before a state prisoner may seek federal habeas relief under § 2254, he "must 'fairly present' his federal claims to the state courts." *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010). The purpose of this requirement is to give state courts the first opportunity to correct errors alleged by state prisoners. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). To satisfy the fair presentation requirement, the prisoner must present the federal nature of his claim to each level of the state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). When a state has two tiers of appellate review, a petitioner must raise his federal claims to both levels before presenting his claims in a federal habeas petition. *O'Sullivan*, 526 U.S. at 845 (finding procedural default when petitioner raised three federal claims to the state intermediate appellate court but not in his petition for review to the state supreme court).

To fairly present federal claims at the state level, the prisoner must do more than simply outline the underlying facts or "make a general appeal to a constitutional guarantee as broad as due process." *Turnage*, 606 F.3d at 936 (quotations omitted). At a minimum on direct appeal,

the prisoner must "explicitly refer[] the state courts to the United States Constitution or federal case law." *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (citations omitted). If a state prisoner does not fairly present a federal claim to the state courts, and the claim could no longer be reviewed because of a state procedural rule, the claim is procedurally defaulted. *Turnage*, 606 F.3d at 936. A federal court is prohibited from reviewing a procedurally defaulted habeas claim unless the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Accordingly, the first question before the Court is whether any of Petitioner's claims are procedurally defaulted.

### i.       Ineffective Assistance of Counsel

Petitioner asserts that he was deprived of effective assistance of counsel during his trial. That assertion is based on the contention that his attorney allegedly coerced him into pleading guilty. The Court does not reach the merits of this claim, however, because it is procedurally defaulted.

Petitioner previously filed a petition for habeas corpus with this Court in June 2011. *Vogel v. Roy* ("*Vogel II*"), Civ. No. 11-1421 (PJS/JJG) (D. Minn. June 1, 2011). Petitioner's earlier petition was dismissed without prejudice for failure to exhaust his ineffective assistance of counsel claim. *Vogel II*, Civ. No. 11-1421 (PJS/JJG), ECF No. 3, at 4-5. The Court specifically noted that, because Petitioner filed a "mixed petition," he was required to go back to state court and attempt to have them review his claim of ineffective assistance of counsel. *Id.* at 5. The Court also acknowledged that if the post-conviction claims were dismissed without reaching the merits, they would be procedurally defaulted and not reviewable in a future federal

habeas proceeding, "except upon a showing of sufficient cause and prejudice to excuse the procedural default, or clear proof of actual innocence." *Id.* at 5, n.3 (citing *Coleman*, 501 U.S. at 750). Petitioner must demonstrate that an external circumstance prevented him from presenting his claim to each level of the Minnesota courts. *See Coleman*, 501 U.S. at 750. The Court need not consider prejudice in the absence of cause. *See McCall v. Benson*, 114 F.3d 754, 758 (8th Cir. 1997).

The post-conviction court did not reach the merits of Petitioner's ineffective assistance of counsel challenge. (Resp't App., Exh. 13.) Judge Solien found that Petitioner was required to raise his ineffective assistance argument on direct appeal and, because he did not, the claim was barred by *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). The *Knaffla* rule instructs that issues "raised or known but not raised in an earlier petition for postconviction relief will generally not be considered in subsequent petitions for postconviction relief." *Powers v. State*, 731 N.W.2d 499, 501 (Minn. 2007) (citation omitted). Finding that no exception to the *Knaffla* rule applied, the postconviction court denied Petitioner's request for relief without reaching the merits of the ineffective assistance claim. As a result, Petitioner's claim for ineffective assistance of counsel is now procedurally defaulted.

Barring a showing of cause for the default and actual prejudice, or a showing that a fundamental miscarriage of justice will occur if his claims are not heard, this Court may not review Petitioner's claims in a habeas petition. Petitioner has not shown cause for his default.

Likewise, Petitioner failed to satisfy the "fundamental miscarriage of justice" exception. To satisfy this exception, Petitioner must come forward with "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *Schlup v. Delo*, 513 U.S. 298,

316 (1995); *see also Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010). Petitioner has presented

no evidence to indicate a fundamental miscarriage of justice due to his actual innocence.

Because Petitioner's claim of ineffective assistance of counsel is procedurally defaulted

and he has not demonstrated cause for the default and actual prejudice, nor has he demonstrated

the possibility of a fundamental miscarriage of justice, the Court is precluded from reviewing the

claim's merits.

### B.      Fairly Presented and Exhausted Claims

A federal court's review of the state court decisions underlying a state prisoner's habeas

petition is "limited and deferential."  *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007)

(quotation omitted).  There are three circumstances in which a federal court may grant a state

prisoner's habeas petition:  (1) if the state court adjudication was contrary to clearly established

federal law, (2) if the state court adjudication involved an unreasonable application of clearly

established federal law, or (3) if the state court adjudication was based on an unreasonable

evaluation of the facts.  *See* 28 U.S.C. § 2254(d).

Regarding the first circumstance, a state court decision is contrary to clearly established

federal law "if the state court arrives at a conclusion opposite to that reached by [the] Court on a

question of law or if the state court decides a case differently than [the] Court has on a set of

materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  The second

circumstance is triggered when the state court correctly identifies the governing Supreme Court

precedent, but unreasonably applies it to the facts at hand, or when the state court unreasonably

extends or refuses to extend the Court's precedent to a new context.  *Id.* at 407.  To warrant

habeas relief in this circumstance, the state court's misapplication of the law must be

"objectively unreasonable."  *Id.* at 409.  The final circumstance is controlled by § 2254's

mandate that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Petitioner asserts three grounds for relief. First, Petitioner asserts his plea was not entered voluntarily or intelligently because he was seeing a doctor for abdominal pain prior to his arrest and was not given medical care while incarcerated at ACJ. Second, Petitioner claims he was refused medical care while at ACJ. Finally, he contends he was forced to plead guilty in order to receive better medical care in a DOC prison facility. To support that conclusion, Petitioner relies on Swenson's comment that Petitioner should plead guilty to get better care in DOC custody. The Court construes each of these grounds as a challenge to his guilty plea. Specifically, each of these grounds turns on the conclusion of whether Petitioner entered his guilty plea voluntarily and intelligently. Accordingly, the Court concludes Petitioner asserts a sole ground for relief: deprivation of due process in the trial court's acceptance of an unknowing, involuntary guilty plea.

It is well-settled that a guilty plea must be given both knowingly and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Brady v. United States*, 397 U.S. 742, 747-48 (1970) (citing *Boykin*, 395 U.S. at 242); *United States v. Goodson*, 569 F.3d 379, 382 (8th Cir. 2009). A guilty plea must be made with "sufficient awareness of the relevant circumstances and likely consequences." *United States v. Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir. 1999). Where a guilty plea is coerced, the plea is not consistent with due process. *Waley v. Johnston*, 316 U.S. 101, 104 (1942). So long as a defendant "understands the nature of the right and how it would likely apply *in general* in the circumstances-even though the defendant may not know the *specific detailed* consequences of invoking it," a guilty plea is voluntary. *Iowa v. Tovar*,

541 U.S. 77, 92 (2004) (citing *United States v. Ruiz*, 536 U.S. 622, 629 (2002)) (emphasis in *Ruiz*). Whether a guilty plea is voluntary and intelligent is determined by considering the totality of the circumstances. *Alvarez v. Straub*, 21 Fed. App'x 281, 283 (6th Cir. 2001) (unpublished) (citing *Brady*, 397 U.S. at 749; *Boykin*, 395 U.S. at 242-44.)

When a criminal defendant enters a guilty plea with full awareness of the direct consequences, that plea must stand unless it is induced by threats, misrepresentations, or "promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady*, 397 U.S. at 755. Indeed, absent threats, misrepresentations, or improper promises, there is no constitutional violation. *Ford v. Lockhart*, 904 F.2d 458, 463 (8th Cir. 1990). Guilty pleas, therefore, "carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Bramlett v. Lockhart*, 876 F.2d 644, 648 (8th Cir. 1989). Indeed, Petitioner's representations at the plea hearing are presumed accurate and overcoming those representations is a significant barrier to relief. *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (citing *Bramlett*, 876 F.2d at 647).

In this matter, the trial court asked Petitioner questions to determine whether he was aware of the rights waived by pleading guilty. The court inquired as to whether Petitioner was satisfied with his representation and whether Petitioner understood he was waiving his right to challenge evidence against him. (Resp't App., Exh. 1, at 6.) The trial court next asked whether Petitioner decided to plead guilty based on a promise or threat made to him, aside from the promises contained in his plea agreement. (*Id.* at 6-7.) Petitioner responded that he was satisfied with his representation, understood he was waiving his right to an omnibus evidentiary hearing, and that he was not pleading guilty pursuant to any promises or threats. (*Id.*) The court next asked about whether Petitioner was impaired by any drugs, alcohol, or other medications. (*Id.* at

7.) Petitioner answered that he was not impaired and that his mind was clear enough to make court decisions. (*Id.*)

Accordingly, it is clear that the trial court asked the necessary questions to determine whether, at that time, Petitioner was pleading guilty intelligently and voluntarily. The Court finds Petitioner's guilty plea was given both voluntarily and intelligently. The thrust of Petitioner's challenge, however, is that the circumstances surrounding his medical condition and alleged lack of medical attention caused his guilty plea to be given involuntarily and unknowingly.

There is no evidence in the record that Petitioner entered his guilty plea with anything but full awareness of the consequences. The Court concludes that any stray comment by Swenson, viewed in the totality of the circumstances, is insufficient to overcome the strong presumption of verity associated with Petitioner's representations at his change of plea hearing. Moreover, based on the record of extensive medical attention afforded Petitioner, the Court finds he was not coerced into pleading guilty to receive better medical attention. Petitioner denied the existence of any threats or promises, acknowledged he was thinking clearly enough to make court decisions, and understood the rights he was waiving.

Further, as the Minnesota Court of Appeals noted, the combination of Petitioner's extensive medical records documenting his care and his statements at his plea hearing firmly establish the voluntariness of his guilty plea. *Vogel I*, 2011 WL 589629, at *2. The appeals court also found his plea to be intelligent because nothing in the record demonstrated Petitioner did not understand the proceedings and consequences of his plea. *Id.* This Court agrees. The totality of circumstances overwhelmingly indicates that Petitioner entered his plea both knowingly and voluntarily.

Petitioner has failed to demonstrate that the state court adjudication was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or was based on an unreasonable evaluation of the facts. Accordingly, the Court recommends the petition for writ of habeas corpus be denied.

### III.    Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner James Mark Vogel's Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED**; and

2. Petitioner's Motion to Expedite (ECF No. 13) be **DENIED AS MOOT**;

3. This action be **DISMISSED WITH PREJUDICE**; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: October 2, 2012                         s/ *Jeanne J. Graham*
                                         JEANNE J. GRAHAM
                                         United States Magistrate Judge


**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **October 22, 2012**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.